CARTER *v.* STATE.*

(Division B.   Oct. 19, 1925.)

[105 So. 514.   No. 24729.]

1. CRIMINAL LAW. *Instructions reciting, "if the jury believe beyond a reasonable doubt from the evidence in this case," reciting proper hypotheses, but omitting "or want of sufficient evidence," held not reversible error.*

It is not reversible error for the state's instructions in a criminal case to recite, "If the jury believe beyond a reasonable doubt from the evidence in this case," reciting the proper hypotheses, but omitting from the instruction "or want of sufficient evidence," as under such instruction the jury must believe from the evidence beyond a reasonable doubt the guilt of the defendant, which means that there must be sufficient evidence to exclude every reasonable doubt of guilt. This is especially true where the instructions as a whole correctly announce the law applicable to the case.

2. CRIMINAL LAW. *Refusal to give instructions argumentative in nature held not to reverse conviction.*

The court need not give instructions which are argumentative in their nature, and the refusal to give such instruction will not reverse the judgment of conviction.

3. HOMICIDE. *Refusal of instruction on right of landlord to enter premises of tenant not error, in absence of evidence that he had been forbidden to enter premises of tenant, or that coming into house was against tenant's will.*

It is not error to refuse an instruction for the defendant, charged with murdering his landlord, that the landlord has no right to invade the premises of the tenant against the wishes and will of the tenant, and has no right under any circumstances to enter the dwelling house of the tenant with a deadly weapon for any purpose hostile to the tenant, where there is no evidence in the case that the landlord had been forbidden to enter the premises of the tenant, or that it was against the will of the tenant for him to come into his house.

4. HOMICIDE. *Refusal to instruct that homicide is justified in resisting unlawful attempt to commit felony in or upon dwelling house where accused was held not error in view of evidence.*

It is not error to refuse to instruct the jury for a defendant charged with homicide that the homicide is justifiable when committed by any person in resisting an attempt unlawfully to commit any felony in or upon any dwelling house in which such person shall be, where the evidence merely disclosed a hostile intent against the deceased, if any hostile act is shown by the deceased, and where the law of self-defense was fully given for the defendant.

5. CRIMINAL LAW. *Refusal of instruction that jury has duty to reconcile all evidence consistent with accused's innocence, and to acquit him if they reasonably can, held not reversible error; jury has duty to consider evidence as whole and draw proper inferences therefrom.*

It is not reversible error to refuse an instruction to the jury for the defendant that it is their sworn duty under the law to try to reconcile all of the evidence consistent with the innocence of the defendant and to acquit him if they reasonably can under all of the evidence introduced. It is the duty of the jury to consider the evidence as a whole and draw the proper inferences therefrom.

6. HOMICIDE. *Refusal of instruction that one has right to defend house and family against unlawful acts and injury held not error, in absence of hostile act or intent toward member of family or residence as such, in view of other instructions.*

It is not error to refuse an instruction for a defendant charged with homicide, that a man has a right to defend his house and family against unlawful acts and injury by another, where there is no evidence to show any hostile act or intent towards any member of the family or any hostile act toward the residence as such, and where the right of self-defense is fully given in instructions for the defendant as to hostile acts towards him.

7. CRIMINAL LAW.  *On objection to statements of prosecuting attorney, sufficient amount of language should be set out in bill of exceptions to show context in which language was used.*

Where statements of a prosecuting attorney are objected to, a sufficient amount of the language should be set out in the bill of exceptions to show the court the context in which the language was used, so that the real meaning of the language may be judged by the context.

---

*Headnotes 1.  Criminal Law, 16 C. J., Section 2411; 2. Criminal Law, 16 C. J., Section 2476; 3. Homicide, 30 C. J., Section 637; 4. Homicide, 30 C. J., Sections 611, 637; 5. Criminal Law, 16 C. J., Sections 2479, 2542; 6. Homicide, 30 C. J., Sections 618, 637; 7. Criminal Law, 17 C. J., Section 3422.

APPEAL from circuit court of Adams county.

HON. R. L. CORBAN, Judge.

Ed Carter was convicted of manslaughter, and he appeals.  Affirmed.

*Engle & Laub,* for appellant.

A great number of serious errors were committed on the trial of this case in the matter of the instructions. Every one of the six instructions given, states the proposition that: "If the jury believe beyond a reasonable doubt from the evidence in this case that . . ." whereas the proper wording of this instruction would be to follow the law as stated in *Hale* v. *State,* 72 Miss. 140, 16 So. 387, which declares that an instruction as to reasonable doubt which declares that it must arise out of the evidence is objectionable since it may arise from want of evidence and this rule of law applies in this case now here for hearing and since all of the state's instruc-

tions ignored the proposition that the reasonable doubt could arise from a lack of evidence as well as out of the evidence, serious harm was done the defendant in the granting of these six instructions for the state.

It is further submitted that the state's instructions are misleading as they require a conviction regardless of who was the aggressor, there having been evidence introduced tending to establish that deceased was killed while making an attack upon the defendant and that the defendant killed the deceased without malice, aforethought. *People* v. *State,* 33 So. 289.

Therefore, the instructions obtained by the state in this case were erroneous in failing to set out that the doubt might also arise from want of evidence upon the part of the state as to how the killing actually took place. *Howell* v. *State,* 53 So. 954.

The court committed further error in refusing instruction No. 4 that: "The court instructs the jury for the defendant that a landlord has no right to invade the premises of his tenant against the wishes and will of the tenant, and has no right under any circumstances to enter the dwelling house of the tenant, armed with a deadly weapon for any purpose hostile to the tenant."

This instruction states a proposition of law in a proper form as applicable to this case. The law as set forth in this instruction would doubtless have influenced the jury in reaching a verdict.

The court further erred in refusing instruction No. 5, which is that: "The court instructs the jury that the killing of a human being, by act of another, is justifiable when committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him or upon or in any dwelling house in which such person shall be."

This instruction plainly states the law under the facts of this case and on what theory the court refused it we were never able to decide. It is a vital instruction. It was the most important instruction asked by the de-

fendant and went to the very gist of the case and the re
fusal of this instruction alone we submit is sufficient .
grounds for the reversal of this case.

The court committed further error by refusing the
first instruction which is: ''The court instructs the jury
for the defendant that it is their sworn duty under the
law to try to reconcile all the evidence consistent with
the innocence of the defendant and to acquit him if they
reasonably can under all the evidence introduced.''

This is an old instruction used in numerous cases in
this state and has been passed upon by this court be-
fore. It is not covered by any other since granted de-
fendant and the defendant was entitled to it, and the
failure to give it in view of the fact that it was not cov-
ered by any other instruction is sufficient grounds for re-
versal.

The court in reading the record in this case will note
that the state improperly kept referring to the fact that
the defendant had not surrendered himself to some white
man while he was near Hamberg, Miss., the first night
after the killing. This line of questioning was objected
to by the defendant, and the court very promptly sus-
tained the objection of the defendant to this line of tes-
timony as being improper in this case yet although such
testimony was ruled out by the court the district at-
torney made use of same as above set forth in the special
bill of exceptions when he, the district attorney made his
argument to the jury and, as we have stated herein be-
fore, in a case as close as this case this argument was
improper and it cannot be said that such a line of argu-
ment did not influence the jury in reaching the verdict
they reached. Under such circumstances this case should
be reversed.

*Francis S. Harmon,* assistant attorney-general, for the
state.

I. Counsel for appellant complains that prejudicial
error was committed because none of the six instructions

given for the state covers the question that a reasonable doubt may arise from the lack of evidence as well as from the evidence in the case. Counsel cites *Hale* v. *State,* 72 Miss. 14, 16 So. 387. The court will find that in the Hale case a specific instruction covering reasonable doubt was granted, and in this specific instruction the phrase "want of evidence" was left out.

In the case at bar the six instructions granted the state all used the stereotyped form, "The court instructs the jury for the state that if they believe beyond every reasonable doubt from the evidence in this case," etc. However, none of these instructions dealt specifically with reasonable doubt and, therefore, there was no error because of omission of any reference to reasonable doubt arising from want of evidence. Furthermore, Instruction No. 2, granted at the request of the defendant, dealt entirely with reasonable doubt and specifically instructed the jury that if "after a consideration of the evidence, *or want of evidence,* a single juror has a reasonable doubt of the defendant's guilt, then you cannot convict him under this charge." The jury being properly instructed on this point and the rule being well settled that all instructions will be considered together, it is quite clear that no error was committed here.

II. Counsel also insists that the state's instructions are misleading in requiring a conviction regardless of who was the aggressor. The short answer is that the six instructions granted for the state plainly advised the jury as to the appellant's right to kill when the appellant was in danger of losing his own life at the hands of the deceased. There is no merit at all in the contention of appellant.

III. Complaint is made because an instruction was refused advising the jury that they could not convict this defendant on a charge of murder. The short answer is that they did not convict him of murder but of manslaughter. Nor does it help appellant to argue that all

life is a compromise and that this was a compromise verdict. It is necessary for appellant to show affirmatively that this was a compromise verdict, in which case this court will mete out justice according to the settled rule of law in those cases. It is necessary for counsel for appellant to show affirmatively and positively that this appellant was prejudiced by the failure to grant this instruction even if it were proper to grant it, and there is not a line in this record or in the brief to show that the verdict brought in was in any respect a compromise.

IV. Fourteen carefully drawn instructions were granted for the defendant covering all the phases of this case, yet counsel complains because six other instructions set out in the record were refused.

Instruction marked "No. 2," to the effect that partial variances in testimony on collateral points are really sources of strength rather than of weakness to a case, was nothing more or less than an attempt to have this court comment on the weight of the evidence. This the statute positively forbids. This instruction tended to mislead the jury and in the light of the fourteen instructions granted the appellant, its refusal was not reversible error.

Similarly, counsel complains because of the refusal of the landlord and tenant instruction, marked "No. 3." This instruction does not state the law. It is well settled that there are circumstances under which the landlord has a right to enter the premises of the tenant against the will of the tenant. Being an incorrect statement of the law, it was properly refused.

Counsel also complains because of instruction marked "No. 4." This instruction does follow the language of the statute and as an abstract proposition is correct. The important point, therefore, is whether or not it has a practical application in this case. The court elaborately instructed the jury as to the law of self-defense, and it is hard to see in the light of these fourteen elaborate instructions which were granted the appellant how the

refusal of this instruction could constitute reversible error. The plain men of the jury box are not interested in the subtleties and niceties of the law to the same extent as the members of the profession, and the important thing in this case is to ask whether or not, in the light of the entire record and in the light of all the instructions granted, the jury was properly advised as to the law when it retired to make up the verdict in the case.

Instruction No. 6 was quite properly refused. It is not clear from this record that this was an unlawful entry, and this instruction as written was predicated on that theory. It is possible that this instruction could have been re-worded so as to avoid this error, but so written it does not state the law accurately and was properly refused.

V. The special bill of exceptions does not show affirmatively that reversible error was committed. In the running fire of an active trial it is inevitable that loose statements should be used from time to time. It appears in the special bill of exceptions that the attention of the court was directed each time to the remarks of the counsel for the state to which exception was taken, and that the court acted promptly in correcting any false impression in the minds of the jury.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted for the murder of one Paul Johnson, and was tried and convicted of manslaughter, and sentenced to a term of twelve years in the state penitentiary. The deceased was a white man, and was appellant's landlord; the appellant being a negro. The deceased was killed in the appellant's residence. The circumstances as developed by the record were substantially as follows:

On Monday before the killing on Tuesday afternoon the deceased went to the appellant's place and stated that he desired the appellant and his wife to begin pick-

ing cotton; it being in the month of August and at the beginning of the cotton picking season. The deceased stated that he expected to give a prize to the tenant who got out the first bale of cotton. Appellant stated to the deceased that it had rained, and the cotton was wet, but deceased insisted that the cotton be picked. On Tuesday morning the deceased came to appellant's house and insisted that they get out and go to picking cotton, threatening to kick the appellant all over the place if he did not do so. Appellant and his wife did go to the cotton field and began picking cotton. Some time during the day Johnson came into the field, but appellant secreted himself in a thicket, and Johnson did not find him. Later in the day the deceased passed the place in sight of where Carter and his wife were picking cotton, but did not stop, appearing to be satisfied with their work. Late in the evening a shower of rain came down, and appellant and his wife went into their house and carried the cotton they had picked into a cotton house near their residence. The deceased came along, stopped, and went to the cotton house, looked in, turned and walked to the house of appellant and entered it; the door being partly open at the time of his entrance, and almost instantly a shot was fired which killed the deceased.

At the time deceased entered the house there were four negroes on the gallery of appellant's house, one of them engaged in cutting the hair of another. Two of those witnesses testified that appellant got out of a car, went to the cotton house, looked in it, turned, and walked to the dwelling house of appellant, walked upon the gallery and on into the house, and that nothing was said by any one; that deceased had a pistol on him, but it was in a scabbard, and that he did not have his hands on the pistol but his hands were hanging down by his side; that the pistol was on his left side, with the handle facing the front of his body. Two other witnesses testified that de- ceased came up on the gallery and walked into appellant's house with his right hand upon the handle of the

pistol, but that nothing was said by him to any one, and that almost immediately when he entered the house a shot was fired, when all of the parties on the gallery ran out. One of the witnesses testified that, after he ran a short distance, he looked back and saw appellant leaving the house armed with a rifle. These negroes ran to the premises of a white man nearby and related what had happened. Three white men thereupon went to the house and entered it.

The first one to enter testified that the deceased was lying with his feet toward the door and his head near the fireplace; that his pistol was almost out of the scabbard; that his left hand was on or near the pistol and the right hand was extended out from the body. It was further testified that deceased was shot through the neck, the jugular vein severed, and his neck broken; the bullet making its exit just below the shoulder line. The testimony of this witness was corroborated by the other two white men, except that they did not see the position of the pistol and of the left hand of the deceased; the first man to enter having picked up the pistol.

The appellant left his home, and was arrested some six days after the killing in a neighboring county. No one was in the house at the time of the shooting except the appellant and the deceased. The pistol was not discharged. The appellant testified and said that when the deceased came into the house he was standing on the opposite side of the chimney with a bucket in his hand, preparing to eat some milk and bread, that he had not had his dinner and was fixing to eat it, and that deceased said, "Now, I have got you," and that deceased drew his pistol with his right hand and presented it in shooting position; that, when deceased spoke the words and started to draw his pistol, appellant reached for his Winchester rifle in a corner nearby and fired as quickly as possible, believing his life was in danger; that he shot in self-defense; that he left home for fear he might be mobbed or lynched; that he tried to get word to the sheriff to

know if he could get protection and a fair trial; that finally he got assurance from the sheriff through a friend or relative; and that he gave up to the sheriff. Appellant testified that on the night of the killing he went to the village of Hamburg, where he had formerly lived. On cross-examination he was asked if there was not a justice of the peace there who would give him protection and treat him right, and he replied that there was, but he did not think about a justice of the peace; that he did not stop in the place and did not talk with any one there; that he had an opportunity in that place to take a freight car and escape had he desired to do so.

It is first complained that the instructions for the state read, ''If the jury believe beyond a reasonable doubt from the evidence in this case,'' etc., whereas the instructions should have read, ''If the jury believe beyond a reasonable doubt from the evidence or want of evidence in this case,'' etc., was error, because doubt might arise on the want of proper evidence or the want of sufficient evidence to justify a conviction. While the doubt may arise from the want of evidence, we think the instructions given gave the jury the necessary information as to reasonable doubt. The law was clearly and fully given on every feature of the case, including apparent danger, and it was not reversible error to word the instructions for the state as they were worded in the particular complained of.

It is also insisted that the court erred in refusing an instruction for the defendant to the effect that partial variances in the testimony of different witnesses on minute and collateral points are of little importance, unless they be of too prominent and striking a nature to be ascribed to mere inadvertence, inattention, or defect of memory; that it so rarely happens that witnesses of the same transaction perfectly and entirely agree on all points connected with it; that an entire and complete coincidence in every particular, so far from strengthening their credit, not infrequently engenders a suspicion of practice and concert; and that, in determining upon

the credence to be given the testimony by the jury, the real question must always be whether the points of variance and discrepancy be of so strong and decisive a nature as to render it impossible or at least difficult to attribute them to the ordinary sources of such variances— that is, inattention or want of memory. It was not error to refuse this instruction. It was argumentative in its nature, and, as stated above, the law given fully defines the defendant's rights upon all points.

It is also complained that the court erred in refusing an instruction for the defendant that a landlord has no right to invade the premises of his tenant against the wishes and will of the tenant, and has no right under any circumstances to enter the dwelling house of the tenant, armed with a deadly weapon for any purpose hostile to the tenant. There is no evidence that the deceased had been warned or forbidden to enter the premises of appellant, or that it was against the will of the tenant for him to come into the house.

It is also insisted that the court erred in refusing an instruction to the jury for the defendant that the killing of a human being by act of another is justifiable when committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him or upon or in any dwelling house in which such person shall be. The right of the defendant to defend himself was charged to the jury favorably to the defendant. The evidence does not show a commission of a felony in or upon the dwelling house, and it is not suggested that the deceased was attempting any felony in or upon such house. The hostile intent, if any at all, was to the defendant himself, and the jury were fully informed of the defendant's right to act in his own defense.

It is also insisted that the court erred in refusing to instruct the jury for the defendant that it is their sworn duty under the law to try to reconcile all the evidence consistent with the innocence of the defendant, and to acquit him if they reasonably can under all the evidence

introduced. The substance of this instruction was grant-
ed in other instructions to the defendant, but the instruc-
tion itself is not accurately phrased and might be mis-
leading. The jury should weigh all the evidence in a
case together, and not merely that which is consistent
with the theory of innocence of the defendant. Such evi-
dence is also to be considered and weighed with that
evidence which is inconsistent with the theory of inno-
cence, and the jury should act upon the whole evidence
and not merely single out such of it as is consistent with
the theory of innocence.

It is also insisted that the court erred in refusing an
instruction to the jury that a man has a right to defend
his house and family and to protect it and them against
unlawful acts and injury by another. This instruction
was properly refused, because there is no proof suggest-
ing any hostile intent or danger to any member of de-
fendant's family or home other than himself, and, as
stated above, the court fully instructed the jury in the
right of self-defense, including the right to act upon ap-
parent danger. An instruction must be applicable to the
evidence in the case or some part of it.

It is also insisted that it was error for the district at-
torney to make certain remarks in his argument. It ap-
pears that the district attorney stated, referring to the
deceased, "He did not know Ed Carter was concealed
in the house with a gun." Upon objection being made,
the court said, "it is a matter of argument." Carter was
in the house with the gun. Whether the deceased knew
he was in there, or did not know of his being in there,
and of his having the gun in there, is a matter of infer-
ence to be drawn from the circumstances. It was evident
that deceased expected to find Carter in the house, but
what his purpose was, or what he knew about Carter
being in there and what he had, is a matter of inference
merely. At any rate it is not sufficient to cause a reversal
of the case. Second, that the district attorney said, "It
is no offense to carry a pistol or gun in a scabbard and

is not unlawful.'' What prejudice this statement could have on the case is not apparent. It is an expression of a legal opinion by the district attorney, but how it could harm the appellant is not apparent. It is next insisted that the district attorney said, ''If you don't believe all she said [referring to appellant's wife] you have a right to disbelieve all; if you don't believe a part, you can disbelieve all.'' It was for the jury to decide whether they would believe all that the witness said and if she were worthy of credit. The jury was not authorized, of course, to disregard all of the testimony of the witness for the sole reason that they did not believe a part of it. To authorize them to disregard all of it because a part is false requires a belief that the falsity was knowingly and corruptly testified to. The statement is not elaborate enough or full enough for us to know its full effect. It is not permissible to single out sentences disconnected with the context, and, where objection is taken to statements, enough of the context ought to be embraced in the bill of exceptions to enable the court to know what a fair construction of the statement would mean.

It is also insisted that the district attorney committed error in stating that, ''He [Ed Carter] knew Mr. Calcote, and you know how Mr. Calcote will take care of a darky.'' We see no merit in this objection.

It is urged that the evidence is insufficient to sustain a conviction, that the appellant's testimony as to how the killing occurred makes a justifiable killing, and that there is no contradiction of such testimony, or, at least, insufficient contradiction, to warrant a jury in finding manslaughter. It is true that the appellant is the only eyewitness, but his statement as to the declaration made by the deceased is contradicted by others who were in a position to hear the remark made, if it was made. It is also admitted that the appellant fled after the killing. This flight is always admissible in evidence as a circumstance tending to show guilt, and the jury may infer guilt from flight. It is true the appellant explained the

reason of his flight, and it is for the jury to say, taking all the facts and circumstances together, whether his explanation is reasonable and true or not. It was not a case of going to an officer or surrendering to the first available officer, because he did not give himself up as speedily as he might had he desired merely to reach a place of safety and official protection. It appears that the jury might well believe that appellant fired the shot before he was in any danger, and that the circumstances were not such as to cause a reasonable man to believe that his life was in imminent peril.

We find no sufficient grounds for reversal of the judgment of conviction, and the judgment will be affirmed.

*Affirmed.*